# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENTEX CORPORATION, | CIVIL ACTION NO. 3:07-CV-1269 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| BRAD SUTTER, PATRICK WALKO, BAE SYSTEMS AEROSPACE & DEFENSE GROUP INC., BAE SYSTEMS AH INC. and BAE SYSTEMS SPECIALTY DEFENSE SYSTEMS OF PENNSYLVANIA INC., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Plaintiff's Motion for Default Judgment. Default judgment against Defendants Brad Sutter and Patrick Walko[1] is appropriate based on their intentional destruction of relevant evidence, so the Plaintiff's motion will be granted in part. But because genuine issues of material fact remain as to whether the Defendant Corporations engaged in spoliation, the Plaintiff's motion will be denied in part.

### **I. Background**

Because I write for the parties only, I will only summarize the facts relevant to the

---

[1] Judgment has already been entered by stipulation against Walko on Count I of Gentex's complaint under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Default judgment against Walko will therefore only be entered on the remaining two counts against him: the claim under Pennsylvania's Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq.*, and the breach of contract claim.

instant motion.

Plaintiff Gentex instituted this action against the Defendants on July 13, 2007, alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq.*, as well as breach of contract and tortious interference.  Gentex alleges that the Defendant Corporations (which I will refer to collectively as "Armor")[2] induced several of its employees to quit Gentex and work for Armor in order to obtain Gentex trade secrets involving its design for an Advanced Combat Helmet ("ACH"). According to Gentex, Defendants Patrick Walko and Brad Sutter copied proprietary files when they left Gentex and shared them with Armor in violation of their non-disclosure agreements with Gentex.

On September 27, 2006, upon learning that Sutter was working on ACH design at Armor, Gentex's attorney wrote a letter to Sutter advising him that he might be violating the terms of his non-disclosure agreement as well as Pennsylvania law.  (Ex. 11.)  The letter asked Sutter to sign an affidavit swearing that he had not used or disclosed trade secrets, advising that if he did not sign it, Gentex's attorney would recommend that the company "take appropriate action to protect its business and prohibit any further breaches of the Agreement."  (*Id.*)  Based on the advice of Armor and counsel, Sutter did not sign the affidavit. (Def.'s Answer ¶ 65.)  Gentex sent a similar letter to Walko.  (Ex. 15 ¶ 17.)

In a business report dated November 22, 2006, Armor documented Gentex's concerns over Sutter's work on the ACH project, noting, "Our attorney believes they are

---

[2] At the inception of this litigation, Defendant Corporations were known as Simula Aerospace & Defense Group, Inc., Armor Holdings, Inc., and Specialty Defense Systems of Pennsylvania, Inc.  Their formal names have changed as a result of a sale and/or merger, but they were known collectively as Armor at the time of all relevant events.

headed toward filing a lawsuit." (Ex. 16 at 2.) On December 8, 2006, Gentex filed suit against Sutter. Armor implemented a litigation hold on January 26, 2007, suspending the document destruction policy and instructing employees to preserve "all paper documents and electronically stored information concerning the Company's relationship with Brad Sutter and his work while at the Company. . . . from March 2006 until the present." (Ex. 28 at 1.) The litigation hold included instructions to preserve backup tapes (Ex. 28 at 3), home and office computers (Ex. 28 at 2), and removable storage media (*id.*). Armor's counsel recommended that the litigation hold continue "until the resolution of Gentex's dispute with Brad Sutter." (*Id.* at 3.)

On February 9, 2007, Armor retained First Advantage Litigation Consulting to assist with evidence preservation and analysis. (Ex. B. at App'x 7.) Armor's forensic investigation involved, *inter alia*: creating ghost images for Sutter, Walko, Vice-President of Engineering Michael Daly, Senior Vice-President Joe Coltman, and Human Resources Director Taryn Sickels in January 2007; creating an image for Sutter's home computer and for six Armor computers belonging to former Gentex employees Walko, Mary Gowat, Scott Hartley, Cheryl Nolan, Sandy Gambutti, and Deborah Panna on March 14, 2007; creating an image of Sutter's Armor laptop on March 15, 2007; creating an image of Nolan's thumb drive on March 29, 2007 and her home computer on April 2, 2007; creating images of thumb drives belonging to Panna, Walko, and Nolan on May 3, 2007; creating special server backup tapes between May and November of 2007; and creating forensic images for seventeen other employee computers between December 13 and 14, 2007. (*Id.*)

On July 13, 2007, Gentex filed suit against all Defendants, an action which was consolidated with the December 8, 2006 action against Sutter. In a deposition by Gentex,

3

Sutter testified that he took CDs and thumb drives with Gentex information on them when he left Gentex. (Ex. 10 at 23:9-24:2.) He states that he may have shared these with Armor colleagues. (*Id.* at 66:20-67:2.) Walko testified that Gentex files were stored on Armor servers and shared over Armor's e-mail system. (Ex. 15 ¶ 4, 6, 15, 16, 45.) Gentex now argues that the Defendants intentionally destroyed or allowed the destruction of evidence in the following ways:

Premature Lift of Litigation Hold: According to Dave Morgan, Armor's Network Administrator, "the litigation hold was taken off" a few months after it was put in place. (Ex. 30 at 29:7-19, 31:23-32:2.) Armor disputes this testimony, arguing that the litigation hold remained in place.

Destruction of Server Back-Up Tapes: Morgan testified that Armor regularly made backup tapes. (Ex. 30 at 36:16-24, 123:14-24.) Gentex's expert analyzed the Armor backup system and determined that in March of 2007, Armor should have had twenty-four sets of backup tapes. (Ex. 31 ¶ 289.) Armor states that although it pulled copies of its backup tapes for production, it has been unable to locate them and assumes they were inadvertently recycled in accordance with company policies. Gentex disputes this for two reasons. First, it cites to testimony of one of Armor's IT employees, who stated that when there is a litigation hold, the company uses software that makes it impossible to inadvertently delete relevant tapes. (Ex. 73 at 247:25-248:18.) Second, Gentex states that even if that software was not used, Armor's regular policy was to keep yearly tapes for seven years (*id.* at 118:6-7), meaning that the 2006 yearly tape should not have been destroyed. Armor also argues that Gentex suffered no prejudice because it created special backups of the servers on or after May 24, 2007, *id.*, but Gentex argues that these special backups cannot preserve evidence

4

from April 2006 to February 2007, the dates when Sutter, Walko, and the other employees used Armor computers. Armor disputes this, arguing that all the backup tapes contain the information from that time period. Gentex responds that Armor's expert stated that he did not know what was on the servers between April 2006 and May 2007 because there were no backup tapes for those dates, and the backup tapes from after May 2007 do not show what was deleted during the earlier time period. (Ex. 66 at 55:10-19, 281:1-8.) Armor further argues that Gentex has not shown that the backup tapes have relevant information that is not duplicative of the information on the computer images. Gentex responds that Armor's expert stated that the ghost images "did not capture the entirety of the file or e-mail servers from those time periods." (*Id.* at 88:5-8.)

Erasure of Sutter's Home Computer: Sutter had Gentex files on his home and Armor work computers. (Ex. 10 at 22:9-20.) Sutter had been advised to preserve his home and work computers by Armor in a memorandum about the litigation hold (Ex. 28 at 2) and by Gentex's counsel at a deposition on January 29, 2007 (Ex. 23 at 30:17-20). On January 31, 2007, Sutter ran software on his computer to scrub his hard drive. (Ex. 10 at 55:12-15.) He explained that he did this because he was scared because Gentex had sued him. (*Id.* at 56:22-57:3.)

Destruction of Portable Storage Devices: Sutter used six removable media devices and eight CD-ROMs on his computer at Armor. (Ex. 36 at 5-6.) Two of the CD-ROMS were labeled with the name of a Gentex employee and three others were dated to the period when Sutter worked at Gentex. (*Id.* at 6.) Sutter said those devices may have contained Gentex information. (Ex. 10 at 61:8-63:1.) Sutter destroyed all of the CD-ROMs with Gentex information that he had in his possession, though he does not recall when. (*Id.* at 63:21-

64:12.) Sutter also had two thumb drives with Gentex information on them. (*Id.* at 23:23-24:2.) Sutter purposely destroyed one after his deposition (*id.* at 24:6-24) and believes that he left the other at Armor (Ex. 61 at 26:4-18). According to Gentex, Armor has only produced one of Sutter's thumb drives, which has music files on it, and no CD-ROMs. Walko also had a CD-ROM with Gentex information on it. (Ex. 62 at 157:3-10.) Walko stated that he destroyed the disc after a conversation with Daly. (*Id.* at 158:6-10.) According to Walko, in January 2007, when Walko contacted Daly about the litigation hold and explained that he had Gentex information on his computer, Daly told him, "Do what you think you have to do to clean up. If you need to clean up, clean up." (Ex. 15 ¶ 45.) Gentex's expert determined sixty-five thumb drives, one hard drive, and seventeen CD-ROMs were used by former Gentex employees on Armor computers between April 2006 and March 2007. (Ex. 31 ¶ 282.) According to Gentex, Armor failed to produce any of the CD-ROMs.

Armor requested that all employees turn in portable media devices between March 29 and May 3, 2007. (Ex. B at App'x 7.) Armor states that it collected six: Walko turned in a drive, Nolan turned in two drives, and Panna turned in three. All these were provided to Gentex. Further, Armor states that it did not authorize, condone, or instruct either Sutter or Walko to destroy portable media. Finally, Armor states that there is no proof that the other devices plugged into Armor computers by Gentex employees contained relevant information.

<u>Delay in Preserving Computers and File Deletion</u>: Gentex's expert states that Armor did not make forensic images of several relevant computers until March 2007, allowing workers to delete files. (*Id.* ¶ 269.) Walko had Gentex files on his computer, and deleted them. (Ex. 15 ¶ 45.) Walko testified that he did this in response to several statements from his supervisors at Armor: Daly told him to "clean up," which Walko interpreted as a direction

6

to delete incriminating Gentex files from his computer (*id.*); Coltman told Walko to "clean it up" (Ex. 62 at 223:13-25); and Sutter, Walko's supervisor, told him to "do what it takes, clean up" (Ex. 15 ¶ 48). Walko also states that Sutter admitted deleting Gentex files from Sutter's own work computer. (*Id.*) According to Walko, Daly told him that Daly was directing other Armor employees to clean up their computers as well. (Ex. 5 at 451:12-19.) Walko additionally testified that Hartley purposely deleted information and then copied large amounts of pictures and videos in order to hide the deleted information. (*Id.* at 492:10-493:5.) Gentex states that the forensic images from Hartley's computer confirm that he copied the same picture of a character from "The Office" multiple times between December 17, 2006 and January 31, 2007 and that he downloaded a large amount of pornographic images on February 22, 2007 and March 8, 2007. Coltman also directed Armor's IT staff to delete a directory called "Joe Files 2006" that contained a significant amount of data. (Ex. 56.) Gentex's expert analyzed the relevant computers and found 57,300 file deletions between March 2006 and March 2007, of which 56,697 were deleted after September 2006, leading him to conclude that the deletions were "intentional and coordinated and designed to circumvent the duty to preserve documents." (Ex. 31 ¶ 331.)

Armor responds that it did not have any duty to delete irrelevant files and that Gentex has not proven that the deleted files were relevant. It states that all files were deleted in the normal course of business, including automatic system deletions. Hartley testified that he was not aware of deleting any files relevant to the lawsuit after the litigation hold. (Ex. U at 199:5-9.) Further, Armor states that it preserved Sutter's computers and produced all relevant evidence from them–and that when Sutter attempted to delete a file without Armor's consent, Armor restored it and produced it to Gentex.

7

Disk Defragmentation: Gentex's expert stated that Windows Disk Defragmentation ("Defrag") was run on all of the Armor computers before forensic images were made of them. (Ex. 63.) Defrag makes it difficult to locate files that have been deleted and overwritten and can mask evidence of deletions. (Ex. 48 ¶ 115; Ex. 64 at 527:17-19.) In some cases, employees testified that they did not run Defrag on their computers. (Ex. 47 at 173:1-174:25.) Gentex's expert suggested that the Defrag may have been done remotely (Ex. 48 ¶¶ 115-125), leading Gentex to suggest that Armor's IT staff was involved in destructing evidence. Gentex's expert also determined that Windows Disk Cleanup, which removes files, was run on several of the computers. (Ex. 31 ¶ 334.) Walko states that he ran Windows Disk Cleanup on his computer after Sutter was sued by Gentex. (Ex. 15 ¶ 46.)

Armor's expert states that Defrag and Cleanup are standard software commonly used by businesses to increase computer efficiency. (Ex. B at 26.) Further, Armor's expert determined that Defrag was only run *by a user* (as opposed to automatically or remotely) on three computers: Hartley's, Walko's, and Sutter's home computer. Armor states that it never instructed Sutter to use any wiping software, and Sutter testified that nobody at Armor told him to clean up his computer. (Ex. E at 53:2-10.) Hartley testified that he ran Defrag because his computer was running slowly (Ex. U at 196:4-7), but he had no intention of purposely deleting information (*id.* at 201:11-17). As for Walko, Armor states that nobody instructed him to run Defrag, and further notes that any deletions would have been revealed by the ghost imaging of Walko's computer in January 2007 or the forensic imaging in March 2007. Daly denies advising Walko to clean up his computer. (Ex. K at 80:18-20.)

Destruction of Ghost Images: Armor made images of the computers used by Panna, Nolan, Gowat, Hartley, and Gambuti. (Ex. 49; Ex. 50 at 86:20-87:25.) Armor later stated

8

that ghost images of those computers could not be located. (Order ¶ 5, Sept. 29, 2010, Doc. 226.) Armor now explains that the confusion stems out of a difference in terminology: they took forensic images of those computers, but not "ghost images."

Failure to Preserve Computers: Gentex asserts that there are several missing computers: those used by Coltman and Gowat as well as those used by several employees who received Gentex information via e-mail from Sutter, including Shane Alt, Jeff Mears, and Stan Lyons. Armor responds that none of the computers were intentionally destroyed. Coltman testified that he lost his laptop at the airport (Ex. L at 284:9-285:24), but there is a ghost image of his work computer from January 2007 and his e-mails were restored from the server . Armor states that there are forensic images of the computers of Gowat, Lyons, and Mears. Armor also explains that Alt's computer was reissued when Alt resigned.

Destruction of E-mails: Walko testified that Sutter deleted many of his own e-mail messages when he was printing them for production to Gentex. (Ex. 5 at 491:8-492:8.)

Destruction of File Server: On January 19, 2007, files from the SPPPA01 server went missing, include the helmets directory. (Ex. 57.) Armor replaced its server in 2007. (Ex. 30 at 101:11-20.) Gentex states that Armor never produced the SPPPA01 server and has since destroyed it. Armor responds that it transferred all of the data from the old SPPPA01 server to the new replacement server.

Gentex filed the instant motion on June 27, 2011, seeking default judgment based on the alleged spoliation. The motion has been fully briefed and is ripe for disposition.

9

## II. Discussion

**A. Spoliation**

Gentex moves for default judgment in its favor on the grounds that the Defendants have engaged in rampant spoliation. Spoliation is defined as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence." *Black's Law Dictionary* 1531 (9th ed. 2009). The burden of proof on a spoliation claim lies with the party asserting the claim. *See Byrnie v. Town of Cromwell*, 243 F.3d 93, 108 (2d Cir. 2001); *Culler v. Shinseki*, No. 3:09-0305, 2011 WL 3795009, at *3 (M.D. Pa. Aug. 26, 2011).

Gentex has presented sufficient evidence to establish that Sutter and Walko engaged in spoliation. Questions of fact remain, however, as to whether Armor engaged in spoliation. In particular, there are fact issues regarding: 1) when Armor's duty to preserve evidence began, 2) whether Armor lifted the litigation hold, 3) whether Armor's deletion of the server backup tapes was inadvertent and/or according to company policy, 4) whether Armor encouraged employees to destroy evidence, 5) whether the deleted "Joe files" were relevant to the litigation, 6) whether the file deletion between September 2006 and March 2007 was intentional and coordinated or part of the routine course of business, 7) whether Disk Defrag and Windows Disk Cleanup were remotely and intentionally run by Armor, 8) whether there are missing ghost images for the computers of five employees, 9) whether the replacement server is missing the helmets directory that existed on the prior server, 10) whether Armor failed to produce relevant portable media devices in its possession, 11) whether Armor failed to produce relevant computers in its possession. Based on these genuine issues of material fact, Gentex's motion for

10

default judgment will be denied in regard to Armor.  Both parties should address these issues of fact at trial.

**B. Sanctions**

Because Sutter and Walko engaged in spoliation, the question becomes whether and what type of sanctions are appropriate.  Federal courts have inherent discretionary power "to fashion an appropriate sanction" for conduct like spoliation that "abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *accord Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *cf.* Fed. R. Civ. P. 37 (allowing the court to sanction a party that fails to comply with a discovery order).  In determining whether sanctions are an appropriate response to spoliation, a court must consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 69 (1994).   "Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal citations omitted).

**1. Fault**

A strong degree of fault exists where "there has been an actual suppression or withholding of the evidence," as opposed to where "the document or article in question

11

has been lost or accidentally destroyed." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). In this case, the evidence is clear: both Sutter and Walko admit to intentionally destroying the evidence despite full awareness that it would impede the litigation. Sutter attempts to deny fault by explaining that he was afraid,[3] but cites to no case suggesting that fear of litigation is a legitimate exception to the rules of spoliation. The strong degree of fault in this case suggests that sanctions are appropriate.

### 2. Prejudice

There is no doubt that Gentex was prejudiced by Sutter's and Walko's spoliation. Sutter and Walko admitted to having Gentex information. The destruction and/or erasure of computer files, e-mails, thumb drives, and CD-ROMs deprives Gentex of evidence relevant to prove the extent of information taken by Sutter and Walko and whether and how it was used at Armor. Armor argues that Gentex still has access to some evidence in the form of ghost images and files from other computers. There is no replacement, however, for the lost evidence on Sutter's and Walko's portable media devices. Further, Sutter erased his home computer prior to Armor's imaging, and therefore that evidence is lost as well. Thus, this factor also weighs in favor of imposing sanctions.

### 3. Proportionality

In choosing the proper sanction, courts must "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid*, 13 F.3d at 79 (quoting Jamie S. Gorelick et al., *Destruction of Evidence* § 3.16, at 117 (1989)). Gentex moves for the most severe sanction possible. *See, e.g.,*

---

[3] Walko did not file a brief in opposition to this motion.

12

*Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994) ("A sanction that has the drastic result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a last resort, to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available."). Default judgment is a proportional response in this case, however, given Sutter's and Walko's unabashedly intentional destruction of relevant, irretrievable evidence. I am especially conscious of the deterrence value of harsh sanctions in cases like this where the crucial evidence exists in electronic form, and a party may destroy its opponent's case with the mere click of a button. Based on the egregious conduct of Sutter and Walko, the significant prejudice to Gentex, and the need for a strong deterrent, Gentex's motion for default judgment will be granted as to Sutter and Walko.

### III. Conclusion

For the reasons explained above, Plaintiff's motion for default judgment will be granted in part and denied in part. An appropriate order follows.

| | |
|---|---|
| October 24, 2011 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENTEX CORPORATION, | CIVIL ACTION NO. 3:07-CV-1269 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| BRAD SUTTER, PATRICK WALKO, BAE SYSTEMS AEROSPACE & DEFENSE GROUP INC., BAE SYSTEMS AH INC. and BAE SYSTEMS SPECIALTY DEFENSE SYSTEMS OF PENNSYLVANIA INC., | |
| Defendants. | |

## **ORDER**

**NOW**, this __24th__ day of October, 2011, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 295) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Plaintiff's Motion for Default Judgment against Defendants Brad Sutter and Patrick Walko is **GRANTED.** Judgment shall be entered in favor of the Plaintiff and against Sutter and Walko.

(2) Plaintiff's Motion for Default Judgment against BAE Systems Aerospace & Defense Group Inc., BASE Systems AH Inc., and BAE Systems Specialty Defense Systems of Pennsylvania, Inc. is **DENIED.**

                                                    /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge